Anna **MASSZONIA**, Plaintiff,

v.

Walter E. **WASHINGTON**, individually and as Commissioner of the District of Columbia;

William H. Brown, individually and as Water Registrar of the District of Columbia;

Lyman C. Delle, individually and as President of ABC Realty Company, Inc.;

Potomac Electric Power Company;

and

Washington Gas Light Company, Defendants.

Civ. A. No. 1560–70.

United States District Court, District of Columbia.

July 22, 1970.

Stanley Sitnick, Marsha Quintana, Samuel B. Abbott, Neighborhood Legal Services Program, Washington, D. C., for plaintiff.

Madison McCulloch, Asst. Corp. Counsel, for defendants Washington and Brown.

Jo V. Morgan, Jr., Whiteford, Hart, Carmody & Wilson, Henry F. Krautwurst, H. Edward Holtz, Washington, D. C., for Washington Gas Light Co.

Stephen A. Trimble, Richard W. Turner, Hamilton & Hamilton, George W. Warlick, Washington, D. C., for Potomac Electric Power Co.

## MEMORANDUM OPINION

GESELL, District Judge.

This motion for preliminary injunction is brought by a tenant living in a substandard apartment complex of about 165 units, located at 14th and Girard Streets, N.W., individually and on behalf of all other tenants in the complex. The owner of these apartment buildings was recently sued in the Court of General Sessions by these same tenants for failure to provide housing that meets minimum standards under the Housing Regulations of the District of Columbia. Mitchell v. ABC Realty Co., Inc., GS 3522–70. Since about that time, the owner has made no effort to collect rents, and has failed to honor the utility bills for water, gas and electricity. As a consequence, the tenants face an immediate termination of these essential utilities. They have come to this Court asking equitable relief directing that utility services be continued. The matter is before the Court on affidavits and the issues were fully briefed and argued.

■■ The Court is without power to direct the gas and electrical utility companies to continue service without payment. Under the leases, the owner contracted to pay all utility bills for the

apartment complex, and single water, gas, and electric meters were installed to measure use by all units. D.C. Code § 43–329 requires that utility service be provided only in accordance with the rates and regulations approved by the Public Service Commission, and the obligation of the utilities to terminate service for non-payment has been recognized as an integral and necessary concomitant of proper rate control. Lewis v. Potomac Electric Power Company, 62 App.D.C. 63, 64 F.2d 701 (1933). Both utilities have asked to be dismissed. They have asserted that they cannot and will not make any claim against the tenants, with whom they were not in contractual privity, covering any unpaid services which accrued or will accrue on or before July 31, the time within which the Court has specified that new arrangements for providing services, if any, must be made, whether under Court order or otherwise. Both companies have acted reasonably in the situation, conscious of their public responsibilities, and no purpose is served by holding them in this suit.

It has been suggested by the Corporation Counsel that it would be appropriate for the tenants, who have not been asked to pay rent for two months, to organize a committee which would enter into contracts with the utility companies for continuation of services. This approach, while superficially attractive, is not acceptable to the Court. The apartment units have different utility equipment, rent at different prices, and have varying numbers of occupants. Rents range from $65 to $138 per month, and differ for comparable layouts. There is no recognized formula for distributing the charges among the users, nor is there any assurance that the tenants themselves could work out an acceptable formula. The tenants contend that the owner's failure to provide adequate housing relieves them of any obligation to pay for any of the services, as may well be the case. *See* Housing Regulations of the District of Columbia, § 2902; Javins v. First National Realty

Corp., 428 F.2d 1071 (D.C.Cir.1970); *cf.* Bell v. Tsintolas Realty Co., 430 F.2d 474 (D.C.Cir.1970). Considering all this, along with the fact that many of the tenants lead a marginal existence and changes of occupancy may well occur, there is no probability that a stable solution can be achieved by following this suggested course. Such a decree would be inappropriate in any event, for experience well teaches that unless a decree is amenable to clear and certain execution, it should rarely, if ever, be entered. The Court does not have the power to force the tenants to proceed in the manner suggested by Corporation Counsel. His suggestion is in essence a suggestion that the Court do nothing. Under the circumstances present here, the public interest cannot be served by inaction.

Thus, the litigation, at least at this stage, presents the novel question whether, under the circumstances here prevailing, the Court should direct the Mayor to provide free utility service to the tenants by enjoining any cut-off of the water, which is controlled by the city, and by requiring the District to contract for gas and electrical service *pendente lite* or until occupancy of the building is terminated.

At the outset, certain background information bearing on the equities is worth noting. As of May, 1970, the housing inspectors noted over 1,000 violations of the Housing Code on the premises in question, reflecting the general intolerable conditions that have existed for many years, unattended and unabated. As the affidavits indicate, dwelling units in the apartment complex leak, there is falling plaster, broken windows, inadequate locks, absence of shades and screens, filthy sinks and backed up bathroom plumbing, inadequate heating, insufficient hot water, holes in the walls, rats, roaches, etc. In addition, the owner's rental of these structures was apparently contrary to law, and the authorities, who were aware of the situation, tolerated noncompliance. The owner has rented the apartments since about 1961 without ob-

taining the certificates of occupancy required by § 8104 of the Zoning Regulations of the District of Columbia; for the past two years, he lacked the apartment house license required by § 3102 of the Housing Regulations. Only recently has the District given some indication that it may take action with respect to this situation which should have been corrected long ago.[1]

There is nothing novel about this situation. It is quite typical of conditions that exist in many parts of the inner city, conditions so frequently chronicled that they may be a matter of judicial notice. The city's compassionate and responsible Mayor does not have adequate funds to enforce the regulations and effectuate their purpose. He is confronted by a dilemma which suggests no practical political solution. The city has no authority to take over structures by way of receivership and operate them at city expense for the public good. Lacking funds, the city administration has apparently determined to tolerate substandard housing, marginal conditions of safety and sanitation, and the overreaching habits of certain landlords simply because the necessary resources to stop the inexorable blight of the inner city have not been provided.

The Corporation Counsel suggests that an order requiring the District to provide utilities in this case will open "a Pandora's box." He correctly points out that there are perhaps some 100,000 persons living in the District under conditions quite comparable to those which this complaint portrays. These practical considerations and their overtones cannot, however, be urged as grounds for staying the exercise of this Court's equity power where, as here, there exists an emergency threat to the public safety and welfare. The laws and regulations relating to housing recognize that inadequate housing such as this record reflects is a social evil that breeds crime, causes racial tensions and is in all respects a public nuisance. See Housing Regulations of the District of Columbia, § 2901. Maintenance of proper conditions of safety and sanitation is an essential responsibility of good government. Enforcement of the housing laws and regulations would have prevented the present situation from arising.

■ Failure to provide adequate utilities is a violation of the Housing Regulations of the District of Columbia, § 2405. Under D.C. Code § 5–313,[2] the Mayor has authority to correct such violations and to assess the costs as a tax lien against the property. It has been suggested that these provisions are mandatory rather than discretionary, see Reorganization Order No. 55, D.C. Code, Vol. 1, pp. 135 et seq. To the extent that these authorizations give only discretionary authority, any failure to exercise that authority in the circumstances of this case would be an abuse of discretion. Whatever may be the ultimate interpretation of this provision, and it has not been tested, the fact remains that a municipality has the inherent power to abate public nuisances. McQuillin, Municipal Corporations, § 24.65; City of Bakersfield v. Miller, 64 Cal.2d 93, 48 Cal.Rptr. 889, 410 P.2d 393 (1966). Though such power may be labeled "discretionary," its mere existence implies, in the absence of legislative direction to the contrary, a clear duty to act where an emergency situation exists. Cf. Environmental Defense Fund, Inc. v. Hardin, 428 F.2d 1093 (D.C.Cir.1970);

1. In June, 1969, the Housing Division ordered the owner to correct some 350 housing code violations. On February 3, 1970, the Department of Economic Development denied the owner's application for apartment house licenses covering the two years ending October 31, 1970. The District has never initiated any prosecution against the landlord for failing to correct housing violations or for renting the premises without a certification. Nor has any explanation been offered as to the failure to require certificates of occupancy since 1961.

2. See also D.C.Code § 43–1521c, which provides that the District shall have a lien against the property for unpaid water charges.

Peoples v. United States Department of Agriculture, 427 F.2d 561 (D.C.Cir., May 26, 1970) (supplemental opinion); Barlow v. Collins, 397 U.S. 159, 166, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

 Where hundreds of residents, already living a marginal existence in substandard housing, face a cut-off of water, gas and electricity, as they do here, with the attendant danger to health, safety, and property that will accrue, the municipality has a duty to exercise its inherent power.

There being absolutely no way to relocate these tenants immediately, the essential utility services must be provided at public expense to abate the nuisance for the limited period before a more permanent solution can be achieved. Accordingly, the Court will enter an order *pendente lite* directing the Mayor and his subordinates to provide water free of charge to the tenants here involved. The order shall also direct that the Mayor, before July 31, 1970, enter into a contract with Washington Gas Light Company and Potomac Electric Power Company to provide gas and electric services, *pendente lite,* on the premises in question free of charge to the tenants. This obligation, of course, will cease if the holders of the mortgage foreclose and depossess the tenants or if the building is condemned by the District and the tenants are placed elsewhere. The Court interprets the Code as providing that the District may recoup any money expended for providing utilities by assessing a tax against the property.[3] It may of course, also recoup by levying fines against the owner. Since the District, however, shares a heavy responsibility for the conditions that have brought this nuisance about, and since it has both the best means and opportunity to protect the public interest, equity requires that this obligation be placed in the first instance on the municipal authorities. Plaintiffs shall post a nominal security of $100. The complaint is dismissed as to Washington Gas Light Company and Potomac Electric Power Company as of July 31, 1970.

It is not appropriate at this time to outline the course of the remaining proceedings, but in view of the rulings here made it is apparent that this action should be given such priority as the District desires so that it may be freed of unnecessary expenditures for water and private utility services. A specific order should be fashioned by counsel consistent with this opinion and be submitted on or before July 28, 1970.

---

3. The provision allowing a tax to be assessed against the property, D.C.Code § 5–313, requires that reasonable notice be given to the landlord prior to the District's action. The utility companies have agreed not to terminate service prior to July 31, 1970; thus, if the District were to give notice immediately, according to the method described in D.C.Code § 5–315, a "reasonable time" would elapse before any expenditures for gas or electricity are incurred.