Anna **MASSZONIA** et al., Appellants,

v.

Walter E. **WASHINGTON** et al.,
Appellees.

No. 71–1164.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 13, 1972.

Decided Feb. 27, 1973.

**916**

Marsha A. Quintana, Washington, D. C., with whom Samuel B. Abbott, Boston, Mass., was on the brief for appellants.

David P. Sutton, Asst. Corporation Counsel, D. C., with whom C. Francis Murphy, Corporation Counsel, D. C., and Richard W. Barton, Washington, D. C., were on the brief, for appellees.

Before BAZELON, Chief Judge, ROB-INSON, Circuit Judge and JAMESON,* Senior District Judge for the District of Montana.

JAMESON, District Judge:

This is an appeal from an order denying a motion for a preliminary injunction and the appointment of a receiver ancillary thereto. The order of the district court entered January 26, 1971, 321 F.Supp. 965, contains detailed findings of fact which are not questioned on this appeal. Two issues are presented: (1) whether the district court erred in denying the motion, and (2) whether by reason of events intervening since the order was entered the case has become moot and should be dismissed.

*Factual Background*

The appellant Anna Masszonia, a disabled, low-income, welfare recipient, was tenant in a Washington, D. C. substandard apartment complex owned by ABC Realty Co., Inc.[1] From 1961 through 1967 ABC Realty operated the complex under a license issued by the Department of Licenses and Inspections for the District of Columbia, without, however, applying for Certificate of Occupancy. Because of unabated housing

---

* Sitting by designation pursuant to the provisions of Title 28 U.S.C. § 294(d).

1. The complex consisted of three six-story apartments located at 2804 Fourteenth Street, N.W., and 1401 and 1405 Girard Street, N.W. Approximately 66 units were occupied at the outset of this litigation.

regulation violations,[2] applications for a renewal of the license for 1968 and subsequent years were denied on February 3, 1970, and the denials were sustained by the District of Columbia Board of Appeals and Review on May 20, 1970.

On February 26, 1970 a tenant commenced a class action against ABC Realty seeking to recover rents from 1961.[3] Some of the tenants began withholding their rent while others continued paying rent until their June, 1970 rent payment was returned to them. About the time the action was commenced ABC Realty ceased to pay water, gas and electricity bills for the complex, which resulted in termination of water service on May 19, 1970 and threatened termination of gas and electricity.

This class action was filed May 22, 1970 by appellant Masszonia on her own behalf and on the behalf of all tenants similarly situated against Walter E. Washington, Commissioner of the District; the Water Registrar of the District; and the president of ABC Realty, seeking equitable relief that the utilities be continued. In amended complaints ABC Realty[4] and the two utilities were added as defendants.

By order entered July 29, 1970 (opinion at 315 F.Supp. 529) the Commissioner and his subordinates were enjoined from refusing to provide water and sewer service and from refusing to enter into contracts with the utilities to provide gas and electricity, pendente lite, so long as the tenants lawfully occupied the premises, the court holding that it was the duty of the District of Columbia under District of Columbia Code, Section 5–313 (1967) to provide these services on a temporary and emergency basis.[5]

Between July 24 and July 27, 1970 the District served the tenants with orders to vacate the premises by August 3, 1970. On August 3 the district court enjoined the Commissioner and his subordinates from prosecuting any tenant for failure or refusal to vacate his apartment, and ordered the Commissioner to provide relocation services to the tenants within two weeks.

On August 14, 1970 the appellant Masszonia moved for a preliminary injunction under a supplemental complaint, seeking the appointment of a receiver and an order requiring the Commissioner to make necessary repairs and assess a tax on the property for the costs.

### Order of January 26, 1971

The order of January 26, 1971 enjoins appellees,[6] pending appeal, from prose-

---

2. The court found that a "substantial number of housing regulation violations" had been noted from 1966 to July 21, 1970, when 1,053 unabated violations were noted in the three building complex, the violations consisting of "leaking ceilings, falling plaster, broken windows, inadequate locks, absence of shades and screens, backed-up and broken plumbing fixtures, insufficient heat and hot water, holes in walls, accumulations of trash, rats and roaches" which were "so numerous, extensive and substantial that the buildings constitute a danger to the health and safety of the occupants." 321 F.Supp. at 968.

3. Mitchell v. ABC Realty Co., Civil Action No. GS 3522–70 District of Columbia Court of General Sessions.

4. The court found that ABC Realty had been served with all pleadings but had not entered an appearance. The court found further, however, that personal service had not been effected on its president and registered agent and that attempts to locate its officers had failed. 321 F.Supp. at 967.

5. The action was dismissed as to the two utilities. 315 F.Supp. 529, 530–531. At 533, the court noted that "the District may recoup any money expended for providing utilities by assessing a tax against the property. It may of course, also recoup by levying fines against the owner."

6. Appellees are the Commissioner and the Water Registrar of the District of Columbia. As noted *supra* (Note 4), ABC Realty, Inc. and Lyman C. Delle, its president, were not personally served and

cuting or attempting to evict any tenant and requires appellees, pending appeal, to furnish utility services and provide the tenants with relocation services. The court refused to appoint a receiver and refused to order appellees to make the repairs sought by appellants.

The order of January 26, 1971 adhered to the court's conclusion in the July 29, 1970 order that "where low-income tenants who cannot immediately relocate face the imminent failure of essential utility services which are the landlord's responsibility, and the landlord is beyond the effective power of the Court, it is the duty of the District of Columbia under District of Columbia Code, Section 5–313 (1967) to provide these services on a temporary and emergency basis." [7]

The court held further that Section 5–313 "confers only a discretionary authority upon the Commissioner" [8] to correct conditions existing in violation of law or regulation, and the court could not hold as a matter of law "that it would be an abuse of that discretion to fail to provide those utilities on a permanent, continuing basis or to fail to make the extensive repairs sought in this Motion for a Preliminary Injunc-

tion, the ultimate, permanent relief sought in the Supplemental Complaint." [9]

### Events Subsequent to January 26, 1971 Order

On April 19, 1971 (after the record and appellants' brief had been filed in this court) appellant Masszonia filed in the district court a "motion to modify the injunction pending appeal entered January 26, 1971" to order the defendant Washington to terminate the utility services and secure the buildings at 1401 and 1405 Girard Street, N.W., and to require proper securing of the buildings at 2804 Fourteenth St., N.W. in compliance with the January 26, 1971 order.[10]

Pursuant to this motion, the district court on April 22, 1971 ordered the Commissioner "to immediately secure the premises at 2804 Fourteenth Street, N.W. to prevent further access thereto * * *", to terminate the utilities at 1401–1405 Girard Street, N.W., and to "proceed immediately to make said premises secure by boarding up basement and first floor doors and windows and blocking fire escapes." The Commissioner was also authorized to proceed with normal condemnation procedures with respect to the premises at 2804 Fourteenth Street, N.W. He was "en-

did not enter an appearance. Nor have they participated in this appeal. Their liability to the tenants and to the District of Columbia is not before this court. On the merits, this appeal concerns solely the duty of the District of Columbia to appellants to act upon the failure of ABC to correct conditions existing in violation of the law.

7. 321 F.Supp. at 970.

8. Section 5–313, D.C.Code 1967, provides that when the owner of real property fails or refuses after reasonable notice to correct conditions existing in violation of law or regulation, "the commissioners of the District of Columbia may, and they are authorized to, cause such conditions to be corrected; assess the cost of correcting such conditions and all expenses incident thereto * * * as a tax against the property on which such condition existed * * * and carry such tax on the regular tax rolls of the District, and collect such tax in the same manner as

general taxes in said District are collected * * *."

9. 321 F.Supp. at 971.

10. Appellant also sought an order that ABC take no action, pendente lite, to interfere with the "continued assertion of plaintiff's—and the class she represents—leasehold interest in the premises." The motion alleges in part:

"It is asserted, therefore, to allow the buildings to be preserved, pendente lite, and in fear for their lives that plaintiff, and others in the class she represents, vacate involuntarily and without any relinquishment of their legal tenancies.

"Plaintiff represents, to the best of her knowledge, that temporary relocation services are being provided tenants of the complex by the Redevelopment Land Agency."

As set forth in Note 6, we are not here concerned with any claim appellants may have against ABC Realty Co.

joined to take no other or further action in any way affecting the premises at 1401 and 1405 Girard Street, N.W., without further order" of the court.

On June 29, 1971 the district court, upon the motion of plaintiffs, vacated *nunc pro tunc* as of January 26, 1971 the paragraph of the January 26 order requiring the deposit of plaintiffs' public assistance rent allotments into the Registry of the Court.

### Issue of Mootness

Subsequent to oral argument, appellees filed a "Suggestion of Mootness", with supporting affidavits, from which it appears that following the order of April 22, 1971 the premises at 2804 Fourteenth Street, N.W. were condemned and razed, and the premises at 1401–1405 Girard Street, N.W. were barricaded; that the Girard Street property has not since been inhabited, and is "uninhabitable by reason of its insanitary and structurally defective condition;"[11] and that all tenants seeking assistance were relocated.[12]

Appellees contend that "against this background", the "appellants have effectively abandoned the plainly uninhabitable Girard Street property, without likelihood or right of return and that they currently have no possessory interest in that property." Accordingly they argue that the case should be remanded to the district court with directions to vacate its order of January 26, 1971 and to dismiss the case as moot.[13]

In her original and supplemental complaints and motion for a preliminary injunction, appellant Masszonia seeks an injunction which would require the Commissioner to (1) provide utilities on a permanent, continuing basis and (2) make whatever repairs might be necessary to bring the three buildings into compliance with the housing regulations. Ancillary thereto appellants seek the appointment of a receiver to take charge of the property and manage it, pendente lite. When the complaint was filed 66 units of the apartment complex were occupied. All were vacated prior to the district court's order of April 22, 1971. Subsequent thereto the building at 2804 Fourteenth Street, N.W. was demolished, as authorized in the April 22 order. Under this order, however, the Commissioner was enjoined "to take no other or further action in any way affecting the premises at 1401 and 1405 Girard Street, N.W. without further order" of the court. If the district court finds, as stated in appellees' affidavits, that these premises are now uninhabitable, barricaded, and scheduled for demolition, it would appear that the district court should revoke this provision of the April 22 order and dismiss the action as moot.[14]

11. Supporting affidavits indicate also that District authorities will recommend that the Girard Street property be condemned when the order of April 22, 1971 is vacated, and that in December, 1971 the area in which these buildings are located was added to the Neighborhood Development Program and designated for demolition.

12. With respect to appellant Masszonia, the affidavit of the Assistant Executive Director, Office of Relocation and Administration, recites that Mrs. Masszonia "moved to an address unknown on May 17, 1971. Various efforts had been made to relocate Mrs. Masszonia to standard housing, but she expressed plans to move on her own."

13. In oral argument counsel for appellees relied heavily on the contention that the case is moot. Appellees were granted leave to file a motion to dismiss on that ground, and appellants were granted time for a reply. The motion and supporting memorandum and affidavits were filed by appellees. Appellants have not responded. In the absence of counter affidavits or other response, we accept as true the facts set forth in appellees' affidavits.

14. As noted *supra*, the order of April 22, 1970 was entered after the appeal was taken to this court. In view of our disposition of the appeal it is unnecessary to consider the effect of this order or whether the district court was authorized to enter the order after the appeal was taken from the prior order.

We conclude that the questions here on appeal have become moot and do not reach the merits of the controversy.[15]

This appeal is dismissed as moot and the case is remanded to the district court for further proceedings consistent with this opinion.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge (dissenting in part):

With the appeal now moot,[1] and resultantly the need for its dismissal plain, the sole question remaining for our decision is the disposition which the District Court is to make of its order of January 26, 1971, to aspects of which the appeal is exclusively addressed. My views on this phase of the case differ significantly from those of my colleagues. I think appellees' request that we direct the District Court to vacate the order should be denied as to the portions thereof which were not subjected to the appeal. But I also think United States v. Munsingwear, Inc.,[2] to which this circuit has long adhered, requires vacation of so much of the order as appellants sought to have us review. The court's disposition of the present appeal leaves the order intact and that, I believe, is a clear departure from the wholesome practice which *Munsingwear* approved and which this court has adopted as its own. From

such a disposition, I must respectfully dissent.

I

As *Munsingwear* reveals, the Supreme Court's "established practice . . . in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending . . . decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss."[3] The objective of this procedure, the Court explains, is to "clear[] the path for future relitigation of the issues between the parties and eliminate[] a judgment, review of which was prevented through happenstance."[4] Thus, "[w]hen that procedure is followed, the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme [is] only preliminary."[5]

The practice noted in *Munsingwear* has found frequent acceptance in the federal circuits.[6] In this jurisdiction, we have taken *Munsingwear* as a mandate. In Acheson v. Droesse,[7] decided shortly after *Munsingwear,* we read the latter as "apparently intended by the Supreme Court to announce a rule for the guidance of the United States Courts of Appeals in disposing of cases

---

15. Those provisions of the orders favorable to appellants, from which no appeal was taken, have been complied with or are no longer effective by reason of appellants' abandonment of the property. All relief sought by appellants was based upon their occupancy of the property. If the affidavits filed by appellees are found by the district court to be true, nothing now remains to be litigated.

1. Mootness follows, not necessarily from appellants' involuntary vacation of their apartments, *see* Robinson v. Diamond Housing Corp., 139 U.S.App.D.C. 339, 433 F.2d 497 (1970), reviewed on the merits, 150 U.S.App.D.C. 17, 463 F.2d 853 (1972); *cf.* Gaddis v. Dixie Realty Co., 136 U.S.App.D.C. 403, 420 F.2d 245 (1969), but from the impossibility, under the circumstances described in the majority opinion, of their ever regaining occupancy.

2. 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).

3. *Id.* at 39, 71 S.Ct. at 106 (footnote omitted).

4. *Id.* at 40, 71 S.Ct. at 107.

5. *Id.*

6. See Lumus Co. v. Commonwealth Oil Ref. Co., 280 F.2d 915, 931–932 (1st Cir.), cert. denied, 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 225 (1960); Bodkin v. United States, 226 F.2d 55, 56 (2d Cir. 1959); Industrial Dev. Co. v. Thompson, 231 F.2d 825, 828–829 (8th Cir. 1956); Sawyer v. Pioneer Mill Co., 300 F.2d 200, 201–202 (9th Cir.), cert. denied, 371 U.S. 814, 83 S.Ct. 24, 9 L.Ed.2d 55 (1962).

7. 90 U.S.App.D.C. 143, 197 F.2d 574 (1952).

which become moot pending appeal." [8] "[T]he language of the Supreme Court in the *Munsingwear* case," we said, "clearly directs the Courts of Appeals that in all civil cases in the United States courts which become moot pending appeal, and in which a motion to dismiss as moot is accompanied by a motion to direct that the judgment below be vacated, both motions should be granted." [9] And down through the years since *Acheson*, we have consistently adhered to that understanding. [10]

The opinion in *Munsingwear* makes clear, however, that a party ordinarily entitled to the relief *Munsingwear* affords may debar himself from obtaining it. There the Government had filed a two-count complaint against Munsingwear alleging violations of a regulation establishing maximum prices for commodities which it sold. The first count sought an injunction, and the second treble damages; and, by agreement and an order of the court, proceedings on the second count were held in abeyance pending final determination of the first-count claim for injunction. A similar arrangement was made in a separate suit for treble damages raising the same issues for a different period. The District Court held that the questioned prices complied with the regulation and entered a judgment of dismissal. [11] The Government appealed, and during the pendency of the appeal the involved commodity was decontrolled. On Munsingwear's motion, the Court of Appeals dismissed the appeal for mootness, making no provision for vacation of the District Court's judgment. [12] Munsingwear then moved in the District Court for dismissal of the treble damage claims on the ground that the unreversed judgment of that court on the injunction phase was res judicata of those claims. The District Court granted the motion, the Court of Appeals affirmed, [13] and the case then went to the Supreme Court. [14]

As the Court stated, had the Government insisted upon vacation of the District Court's judgment when the Court of Appeals dismissed the appeal for mootness, it would have been entitled to a direction to that effect. [15] But the Government did not pursue that course; it made no motion to vacate the judgment, but simply acquiesced in the dismissal. Consequently, the Court held, it was not entitled to relief—in the form of an exception to the doctrine of res judicata—from the District Court's judgment. [16]

It is against this backdrop that the disposition appropriate to the case at bar is to be fashioned. One question to be addressed is whether the situation presented falls within the general ambit of the *Munsingwear* doctrine. Another is whether the parties on either side of this appeal have disabled themselves from sharing in the benefits *Munsingwear* confers. To a consideration of these I now proceed.

## II

The order subjected to this appeal— the order of January 26, 1971 [17]— favored appellants in some respects and

---

8. *Id.* at 146, 197 F.2d at 577.

9. *Id.* at 147, 197 F.2d at 578. See text, *infra* at notes 19–22.

10. See Schoop v. Mitchell, 143 U.S.App. D.C. 405, 406, 444 F.2d 863, 864, cert. denied, 402 U.S. 988, 91 S.Ct. 1663, 29 L.Ed.2d 154 (1971); Cadillac Pub. Co. v. Summerfield, 105 U.S.App.D.C. 343, 344, 267 F.2d 620, 621 (1958); Anderson v. Morgan, 105 U.S.App.D.C. 66, 67, 263 F.2d 903, 904, cert. denied, 361 U.S. 846, 80 S.Ct. 99, 4 L.Ed.2d 84 (1959); Dulles v. Nathan, 96 U.S.App.D.C. 190, 192, 225 F.2d 29, 31 (1955).

11. Bowles v. Munsingwear, Inc., 63 F. Supp. 933, 938 (D.Minn.1945).

12. Fleming v. Munsingwear, Inc., 162 F.2d 125, 127–128 (8th Cir. 1947).

13. United States v. Munsingwear, Inc., 178 F.2d 204 (8th Cir. 1949).

14. United States v. Munsingwear, Inc., *supra* note 2.

15. 340 U.S. at 40, 71 S.Ct. 104.

16. *Id.* at 40–41, 71 S.Ct. 104.

17. Masszonia v. Washington, 321 F.Supp. 965 (D.D.C.1971).

appellees in others. To appellants' detriment, it rejected the demand that the court direct repairs putting the premises in suit in habitable condition through the medium of a receivership or by imposition of that responsibility upon appellees.[18] It was the refusal to grant the request in either alternative that appellants sought to have altered on this appeal. Now that the appeal must be dismissed for mootness, their entitlement under *Munsingwear* to vacation of those portions of the January 26 order appealed would normally follow. In my view, indeed it does.

I am mindful of the fact that appellants here, like the Government in *Munsingwear*,[19] have not requested vacation of any part of the order, but that, I think, could hardly justify us in ignoring the teachings of *Munsingwear*. Long before *Munsingwear* was decided, the Supreme Court declared that the practice it was later to describe in *Munsingwear* was "the duty of the appellate court."[20] To such a duty *Munsingwear* took pains to itself advert.[21] As a judge, I endeavor to discharge what by higher authority I am told is my plain duty whether I am asked by litigants to do so or not. I perceive no obstacle to discharge of our *Munsingwear* duty here simply because the court reviewed in *Munsingwear* omitted a response to it there.[22] In sum, I would abide *Munsingwear sua sponte*.

I am mindful, too, that relitigation of the issues on which appellants lost in the District Court seems unlikely, but that does not argue effectively against an application of *Munsingwear*. That very consideration was advanced to us in Acheson v. Droesse,[23] where it was urged that we distinguish *Munsingwear* on that basis.[24] We declined the invitation, pointing out that "among the cases cited by the Supreme Court in the" *Munsingwear* opinion [25] "there are instances in which there was no possibility of further litigation of the issues between the parties in the case on appeal even arising, and yet the Court ordered the lower court's judgment vacated."[26] The fact of the matter is that offtimes courts are not in position to know whether the controversy has ground to a definite halt or not, and this case is no exception.[27] The better part of justice is

18. *Id.* at 970–971.

19. See text *supra* at notes 15–16.

20. "Where it appears upon appeal that the controversy has become entirely moot, it is the duty of the appellate court to set aside the decree below and to remand the case with directions to dismiss." Duke Power Co. v. Greenwood County, 299 U.S. 259, 267, 57 S.Ct. 202, 205, 81 L.Ed. 178 (1936) (Citations omitted).

21. United States v. Munsingwear, Inc., *supra* note 2, 340 U.S. at 39–40, 71 S.Ct. 104.

22. It will be noted that it was the Court of Appeals, Fleming v. Munsingwear, Inc., *supra* note 12, 162 F.2d at 127–128, not the Supreme Court, that dismissed the appeal without vacating the judgment appealed from.

23. *Supra* note 7.

24. 90 U.S.App.D.C. at 146–147, 197 F.2d at 576–577.

25. See United States v. Munsingwear, Inc., *supra* note 2, 340 U.S. at 39–40 n. 2, 71 S.Ct. at 106.

26. Acheson v. Droesse, *supra* note 7, 90 U.S.App.D.C. at 147, 197 F.2d at 577. The cases to which we referred were Brownlow v. Schwarts, 261 U.S. 216, 43 S.Ct. 263, 67 L.Ed. 620 (1923), and Berry v. Davis, 242 U.S. 468, 37 S.Ct. 208, 61 L.Ed. 441 (1917).

27. While appellants have thus far invoked only equitable remedies, the possibility of relief of a different character is not foreclosed. And, as the District Court's findings vividly attest, there is much that can be complained about. The apartment complex in which they resided was permitted to operate for eight years without a certificate of occupancy, and for two years within an apartment house license, Masszonia v. Washington, 315 F.Supp. 529, 531–532 (D.D.C.1970); Masszonia v. Washington, *supra* note 17, 321 F.Supp. at 967, and during those periods the premises deteriorated appallingly. In the words of the District Court, "[a]s of May, 1970, the housing inspectors noted over 1,000 violations of the Housing Code on the premises in question, reflecting the general intolerable conditions that have

to liberate the parties from the shackles of res judicata rather than hazard a guess as to what the future may hold.

Turning now to appellees' motion that the January 26 order be vacated in its entirety, that relief in their favor is neither warranted nor possible. The appeal in this case brought before us for review only the parts of the order appellants complained of—the provisions which were unfavorable to them. Since appellees took no appeal from that order, two consequences disastrous to their request follow. In the first place, the unappealed portions of the order have long since become final,[28] and we now lack jurisdiction to disturb them.[29] In the second place, the *Munsingwear* doctrine was never intended to afford protection to parties in the position occupied by appellees. Their evident objective is to avoid the conclusiveness of the declaration of principles representing appellants' partial victory in the District Court.[30] But obviously, as an eminent author has stated, "[i]t would be quite destructive of the principle of judicial finality to put such a litigant in a position to destroy the collateral conclusiveness of a judgment by destroying his

existed for many years, unattended and unabated. . . . In addition, the owner's rental of these structures was apparently contrary to law, and the authorities, who were aware of the situation, tolerated non-compliance." Masszonia v. Washington, *supra*, 315 F.Supp. at 531. See also Masszonia v. Washington, *supra* note 17, 321 F.Supp. at 968. "These violations," the court was later to add, "are so numerous, extensive and substantial that the buildings constitute a danger to the health and safety of the occupants." Masszonia v. Washington, *supra*, note 17, 321 F.Supp. at 968.

Even after the premises degenerated to this unsavory condition, the occupants' woes continued to increase. The corporate landlord walked out on the 66 families then residing in the complex and the corporate officers could not be located. *Id.* at 967. But for the intervention of the District Court, the occupants would have been without basic utility services from mid-1970 onward. *See* Masszonia v. Washington, *supra*, 315 F.Supp. at 532–533. Matters finally worsened to the point that they had no choice but to move out.

The original and primary transgression producing this shameful state of affairs was the landlord's. But those legally charged with the duty of supervising leased housing in the District of Columbia do not appear to be free from blame. In this very litigation, "[t]he Corporation Counsel . . . point[ed] out that there are perhaps some 100,000 persons living in the District under conditions quite comparable to those which this complaint portrays." Masszonia v. Washington, *supra*, 315 F.Supp. at 532. "Enforcement of the housing laws and regulations," the court declared, "would have prevented the present situation from arising." *Id.*

The consequences of this lack of enforcement have fallen upon the group most dependent upon their local government for protection, for, as the District Court found, the named plaintiff in the litigation is "a disabled, low income welfare recipient, representing a class that is best described as generally low income with at least twenty-six (26) public assistance recipients. . . ." Masszonia v. Washington, *supra* note 17, 321 F.Supp. at 966.

In these circumstances, I cannot say that these hapless victims of official indifference would not have justiciable complaints against the public servants responsible for their plight. My colleagues, however, leave standing the adverse rulings of the District Court which appellants endeavored to have reviewed on this appeal. Since I am unable to say that those rulings might not bar any effort undertaken hereafter, I would vacate them.

28. See Fed.R.App.P. 4(a). See also cases cited *infra* note 29.

29. Hodgson v. United Mine Workers, 153 U.S.App.D.C. 405 at 413, 473 F.2d 118 at 124 (1972); Weedon v. Gaden, 136 U.S.App.D.C. 1, 5, 419 F.2d 303, 307 (1969); Lord v. Helmandollar, 121 U.S.App.D.C. 168, 170, 348 F.2d 780, 782 (1965), cert. denied, 383 U.S. 928, 86 S.Ct. 929, 15 L.Ed.2d 847 (1966); Whitehead v. American Sec. & Trust Co., 109 U.S.App.D.C. 202, 206, 285 F.2d 282, 286 (1961); Slater v. Peyser, 91 U.S.App.D.C. 314, 315, 200 F.2d 360, 361 (1952); Randolph v. Randolph, 91 U.S.App.D.C. 170, 172, 198 F.2d 956, 958 (1952).

30. See Masszonia v. Washington, *supra* note 17, 321 F.Supp. at 970–971.

own right to appeal."[31] Nothing in *Munsingwear* supports such an approach; rather, the rule is well settled that the operation of the doctrine of res judicata is unaffected by the fact that the party sought to be concluded did not appeal from the adversity wrought by the judgment.[32] The situation as to appellees is not one in which the January 26 order should at their behest be vacated *in toto* "to prevent a judgment, unreviewable because of mootness," as distinguished from failure to appeal, "from spawning any legal consequences."[33] It is only as to the rulings against appellants which have since become "unreviewable because of mootness . . ."[34] that vacation is called for, but as to them the call, in my view, is clear.

———◆———

31. IB Moore, Federal Practice ¶ 0.416 [6] at 2327 (2d ed. 1965).

32. United States v. Munsingwear, Inc., *supra* note 2, 340 U.S. at 39, 41, 71 S.Ct. 104; Angel v. Bullington, 330 U.S. 183, 189–190, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Hubbell v. United States, 171 U.S. 203, 206–209, 18 S.Ct. 828, 43 L.Ed.

136 (1898); Wilson's Ex'r v. Deen, 121 U.S. 525, 532–534, 7 S.Ct. 1004, 30 L.Ed. 980 (1887).

33. United States v. Munsingwear, Inc., *supra* note 2, 340 U.S. at 41, 71 S.Ct. 104, 107.

