Ulysses G. AUGER, Petitioner,

v.

**D.C. BOARD OF APPEALS AND REVIEW, Respondent.**

Ulysses G. AUGER, Appellant,

v.

**DISTRICT OF COLUMBIA, Appellee.**

Nos. 82–123, 82–449.

District of Columbia Court of Appeals.

Argued April 26, 1983.

Decided March 30, 1984.

Louis P. Robbins, Washington, D.C., for petitioner-appellant.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Washington, D.C., at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent-appellee.

Before MACK, FERREN and PRYOR, Associate Judges.

FERREN, Associate Judge:

Petitioner-appellant Auger (petitioner) seeks review of (1) the Board of Appeals and Review's (BAR's) dismissal of his administrative appeal from the District of Columbia's imminent enforcement of an or-

der revoking his permit for a neon sign atop his hotel, and (2) the Superior Court's dismissal of his complaint for a declaratory judgment that his permit is valid, and the court's denial of a preliminary injunction prohibiting District authorities from entering his property and removing the sign. Pending this court's review of the BAR and Superior Court dismissal orders, we stayed the District's enforcement effort.

Because petitioner did not file a timely appeal of his permit revocation with the BAR, he failed to present us with a "contested case." This court accordingly lacks jurisdiction to review the revocation of his permit. The Superior Court also properly dismissed the complaint on the revocation issue, given petitioner's failure to exhaust administrative remedies. Because petitioner's administrative appeal rights have expired, the permit for the sign must be deemed revoked.

As to the District's effort to enforce the revocation by taking steps to remove the sign, petitioner did create a "contested case" and timely invoked our jurisdiction with his petition for review. Because petitioner did not receive the required administrative hearing, we remand the case to the Department of Housing and Community Development (not to the BAR, which did not have jurisdiction to review enforcement). Petitioner shall be afforded an opportunity, if he still wants one, to show cause at a "contested case" hearing why the District should not remove the unpermitted sign.

I. FACTS AND PROCEEDINGS

These cases, consolidated for purposes of our review, are complex because two District of Columbia agencies,[1] the Department of Licenses, Investigations, and Inspections (DLII) and the Department of Housing and Community Development (DHCD), issued separate orders affecting the petitioner's sign: a DLII order revok-

---

1. Under the District of Columbia Administrative Procedure Act (DCAPA), a "department" of the District of Columbia government is considered a "subordinate agency" to which the DCAPA applies. D.C.Code § 1–1502(3) & (4) (1981).

ing the permit, and DHCD orders revoking the permit and directing removal of the sign.

### A. *Department of Licenses, Investigations, and Inspections*

On May 23, 1980, petitioner applied to DLII for a permit to place a neon "Marriott" sign on the penthouse of his hotel at 22nd and M Streets, N.W. DLII issued the permit a month later on June 20. By August 9, the sign had been placed on the hotel and was fully operational. After DLII received a letter from DHCD pointing out that DHCD's Engineering Review Section had not approved petitioner's permit application because the sign exceeded height regulations (specifically Article 14, § 1405.2 of the Building Code), DLII wrote petitioner·on August 29, 1980, that his permit was revoked as erroneously issued. The letter directed petitioner to surrender the permit "immediately." It further stated that petitioner could appeal the revocation to the Board of Appeals and Review but that a BAR appeal would not stay the revocation order.

On September 3, 1980, petitioner's attorneys notified DLII that they were investigating the legality of the revocation order and would not surrender the permit immediately. Three weeks later, on September 24, 1980, petitioner's attorneys sent DLII a letter setting forth in considerable detail their position that DLII had no legal basis for revoking the permit. The letter concluded by saying "we consider the matter closed." Petitioner did not return the permit or file a notice of appeal with the BAR.

### B. *Department of Housing and Community Development*

On August 29, 1980, the same day DLII revoked petitioner's permit, DHCD sent him a letter stating that the sign violated Article 14, § 1405.2 of the Building Code, 12 DCMR § 1405.2, revoking his permit pursuant to §§ 109.2(1) and 109.3 of that Code, 12 DCMR §§ 1902.(1), 109.3, and directing him to remove the sign within five

days or to face further enforcement action. Petitioner replied with a copy of his counsel's letter of September 3 to DLII, saying the matter was under investigation. On September 24, counsel sent DHCD a copy of his letter of that date to DLII saying petitioner considered the matter closed. On September 30, DHCD ordered petitioner either to take down the sign within 21 days or to show cause why he should not be required to do so. Otherwise, DHCD, by authority of D.C.Code § 5–313 (1973) (recodified as *id.*, § 5–513 (1981)), would "cause said condition to be corrected" and assess the costs against petitioner.

In response, on October 10, 1980, petitioner's counsel wrote DHCD, saying that the September 24 letter to DLII (copy to DHCD) detailing reasons for considering the permit revocation invalid "shows cause why permittee should not be required to remove said sign." Counsel requested a meeting to discuss the matter.

On November 17, 1980, petitioner and his attorneys met with DLII, DHCD, and Corporation Counsel officials and worked out an oral compromise and settlement. Although the terms of that agreement are in dispute, it appears that petitioner agreed to remove the sign in consideration of the District's agreement to expedite the certificate of occupancy for petitioner's hotel and to bear part of the cost of removing the sign.

Dissatisfied with the District's slowness in processing the certificate of occupancy, petitioner did not remove the sign. During 1981, petitioner and his counsel met numerous times with District officials but did not resolve the matter. On November 30, 1981, DHCD sent petitioner a letter giving "final notice" that the sign must be removed within ten days and stating that, if he did not do so, the District would contract to have the sign removed without further notice. In reply, petitioner's attorneys wrote to DHCD on December 4, 1981, requesting that DHCD not remove the sign. The letter characterized DHCD's proposed action as "legally questionable,"

suggested "an orderly administrative and/or judicial process" to resolve the dispute, and requested "at least three working days' notice if the District decides to have the sign removed."

DHCD replied by letter on February 5, 1982 (which petitioner received on February 8), pointing out that petitioner had had an opportunity to appeal DLII's permit revocation to the BAR and had failed to do so; that his attorney had testified at a special exception and variance hearing before the Board of Zoning Adjustment that the sign was coming down;[2] and that petitioner had promised at the November 17, 1980 meeting with District officials to remove the sign but had not done so. DHCD's letter denied that the District had failed to adhere to the November 17 agreement and informed petitioner's attorneys that the District would immediately contract for removal of the sign.

C. *Superior Court and Board of Appeals and Review*

A few days later, on February 10, 1982, petitioner filed a complaint in Superior Court for a declaratory judgment that the sign permit was valid, as well as motions for a temporary restraining order and a preliminary injunction to prevent removal of the sign. The court denied the motion for a TRO because of a failure to show irreparable injury.

On February 12, 1982, petitioner filed a notice of appeal with the BAR. The BAR treated it as an appeal from the August 29, 1980, DLII revocation order and, on February 16, dismissed it as untimely filed.[3]

On February 17, 1982, petitioner appealed to this court the denial of the TRO and, on the same day, filed a petition for review of the BAR's dismissal of his administrative appeal. This court granted a stay of the District's efforts to remove the sign pending our review of these matters. On April 6, 1982, the trial court denied petitioner's motion for a preliminary injunction and dismissed his complaint for declaratory judgment. Petitioner appealed these rulings. We consolidated that appeal with the petition for review of the BAR's dismissal of his administrative appeal (and dismissed the appeal from the court's denial of the TRO as moot).

II. THE PARTIES' LEGAL ARGUMENTS

In order to sort out the analyses applicable, respectively, to the petition for review and to the appeal, it is helpful first to explicate the parties' legal positions, which for the most part have been advanced to both the BAR and the Superior Court.

At the heart of these cases is the BAR's dismissal of petitioner's appeal for failure to take a timely appeal of DLII's revocation order, and the Superior Court's corresponding dismissal of the complaint for declaratory and injunctive relief, apparently for failure to exhaust administrative remedies.[4]

A. *Petitioner*

Petitioner argues that he had no obligation to appeal DLII's revocation order to the BAR because that action was void (not merely voidable) for lack of authority to revoke the permit. More specifically, he states that:

—Until 1969, the Director of the now-defunct Department of Licenses and Inspections (DLI) had authority to issue building permits. In addition, the DLI Director, as well as officials of the DLI Licenses and Permit Division itself, had authority to rec-

---

2. The hearing concerned the hotel's roof structure and is not relevant to the present dispute.

3. BAR rules require filing of a notice of appeal "within ten days after the date notice of the action or decision appealed from was personally served on or mailed to the appellant." BAR Rule 21.1(a).

4. Although the Superior Court did not give reasons for its dismissal, the exhaustion problem was discussed at length at the hearing on the motion to dismiss.

ommend revocation of a permit to the BAR and, absent an appeal to the BAR, the Director had authority to revoke the permit, all as set forth in Reorganization Order No. 55, as amended, D.C.Code, Title 1, Administration, Appendix, Part III(A)(9) & (E)(5) 183, 185 (1973); [5]

—On March 7, 1969, all DLI functions were transferred to the Department of Economic Development (DED) by Commissioner's Order No. 69–96;

—On July 3, 1975, DED's permit revocation authority (but not its permit issuance authority) was transferred to a newly created DHCD by Reorganization Plan No. 3 of 1975, D.C.Code, Title 1, Administration, Appendix 135–37 (Supp. V, 1978).[6] Specifically, Reorganization Plan No. 3 expressly provided, with respect to permits, that only "[t]he functions relating to the issuance of licenses, permits and certificates in connection with the administration of such [building and housing] codes, [zoning] laws and regulations shall remain vested in the Director of the Department of Economic Development" (emphasis added). Note 6 *supra.* DED was renamed the Department of Licenses, Investigations, and Inspections (DLII) in 1978 by Mayor's Order 78–42.

—Thus, only DHCD, not DLII, has permit revocation authority, and has it expressly under § 109.3(1) of the Building Code, *supra,* administered by DHCD. Accordingly, DLII's purported revocation of petitioner's permit was a nullity.

As to DHCD's revocation and enforcement actions, petitioner states that:

—The sign did not violate Article 14, § 1405.2 of the Building Code, *supra,* and was not revocable under § 109.3(1) of that Code, *supra;*

—Alternatively, revocation of the permit was barred by laches and estoppel;

—Even if the revocation was valid, DHCD had no authority to order removal of the sign pursuant to D.C.Code § 5–513 (1981) (formerly § 5–313), which pertains solely to abatement of public nuisances; and, in any event, DHCD would not afford petitioner the required—and requested— hearing on DHCD's September 30, 1980, order to show cause why the sign should not be removed.

—The BAR has jurisdiction under Organization Order No. 112, Part E(1), D.C.Code, Title 1, Administration, Appendix 140–41 (Supp. V, 1978), to entertain petitioner's appeal and to bar DHCD (formerly DED)

---

**5.** Reorganization Order No. 55, as amended, provides in relevant part:

 A. *Office of the Director*

 * * * * * *

9. In cases where a recommending department head determines that violations of regulations are causing conditions that are imminently dangerous to health, safety or welfare, he summarily suspends the license, permit, or certificate, which suspension continues and precludes any renewal until the condition is corrected. In all other cases, after due notice which specifies violations and reasons for proposed action, and after expiration of 7 days from date of service, to allow for appeal to the Board of Appeals and Review, and if no appeal is noted, suspends or revokes licenses, permits or certificates.

 * * * * * *

 E. *License and Permit Division*

 * * * * * *

5. Recommends to the Board of Appeals and Review suspension or revocation, for good and sufficient cause, of licenses, permits, and certificates previously issued subject to such review as may be indicated by the Department Director.

**6.** Reorganization Plan No. 3 of 1975 provides in relevant part:

7. *Transfer of functions and delegated authorities relating to the Department of Economic Development.* The powers, duties and functions of the Director of the Department of Economic Development, as set forth in Commissioner's Order No. 69–96 of March 7, 1969, as amended, relating to the administration and enforcement of the building and housing codes and the zoning laws and regulations are transferred to the Director of the Department of Housing and Community Development except as herein provided. The functions relating to the issuance of licenses, permits and certificates in connection with the administration of such codes, laws and regulations shall remain vested in the Director of the Department of Economic Development.

from revoking the permit and removing the sign;

—DHCD did not take final agency action to enforce the revocation order until February 5, 1982;

—Petitioner's appeal of DHCD's action to the BAR on February 12, 1982, was therefore timely, since it met the ten-day filing requirement. BAR Rule 21.1(a).

—The BAR accordingly erred in dismissing the appeal as untimely by reference solely to petitioner's failure to appeal the void DLII revocation order of August 29, 1980. Thus, the DHCD/BAR case should be remanded to the BAR for a hearing under the District of Columbia Administrative Procedure Act (DCAPA), D.C.Code §§ 1–1501 *et seq.* (1981), and the Superior Court action should be stayed pending the outcome. Alternatively, the Superior Court's dismissal order should be vacated and injunctive relief granted.

### B. *The District*

In response to petitioner's DLII argument, the District asserts that DLII does have authority to revoke his sign permit because:

—In 1969, all DLI functions, including its permit revocation authority under Reorganization Order No. 55, *supra,* were transferred to DED by Commissioner's Order No. 69–96, *supra;*

—In 1975, neither DED's permit issuance authority nor its permit revocation authority was transferred to the newly-created DHCD by Reorganization Plan No. 3 of 1975, *supra.* According to the District's

brief "[t]he functions relating to the *issuance* of licenses, permits and certificates"—which everyone agrees remained vested in DED—had "consistently been interpreted by DLII officials as continuing [from DLI] in DED, and subsequently in DLII, the authority to *revoke* building permits issued by DED and DLII." (Emphasis added.) This interpretation by officials charged with the day-to-day enforcement of these regulations (supported by affidavit in the court case) is not clearly erroneous and thus may not be disturbed.

—In 1978, DED was renamed DLII by Mayor's Order 78–42; thus, DLII has retained DED's permit revocation authority exercised against petitioner on August 29, 1980.[7]

—Because petitioner did not take a timely appeal to the BAR, DLII's revocation of the permit is final and, as to that action, the petition for review accordingly should be dismissed for lack of "contested case" jurisdiction. D.C.Code §§ 1–1502(8), –1510 (1981). Similarly, the Superior Court's dismissal of petitioner's complaint challenging DLII's revocation of the permit should be affirmed because of failure to exhaust administrative remedies;[8]

As to the DHCD enforcement action, the District replies that, whereas the BAR does have jurisdiction under Organization Order No. 112, *supra,* to review a permit revocation order, the BAR does not have jurisdiction to review a DHCD enforcement order pursuant to D.C.Code § 5–513 (1981) (formerly § 5–313). Thus, the BAR's refusal

7. Without explaining how DHCD received any revocation authority if DED (and later DLII) retained DLI's revocation authority after Reorganization Plan No. 3, *supra,* the District argues that petitioner is incorrect in asserting that the only relevant revocation authority is lodged in DHCD under § 109.3(1) of the Building Code, *supra.* According to the District, that section applies only "in case of any material false statement or misrepresentation of fact in the applications as on the plans, on which the permits or approvals were based." The District points out that in his counsel's letter of September 24, 1980

to DLII, petitioner himself contended that § 109.3(1) was inapplicable because his application and plans contained no false statement or misrepresentation of fact. The District argues it is absurd to contend that this can be the only basis for revoking a permit, since that would provide the public with no relief from administrative error.

8. The District preserves its position on the merits by arguing that the permit violates Article 14, § 1405.2 of the Building Code, *supra,* and that revocation is not barred by laches or estoppel.

to entertain petitioner's § 5–513 argument should be affirmed.[9]

#### C. *Issues for Review*

The principal issues, framed by reference to the revocation and enforcement orders, respectively, are:

1. Whether petitioner's failure to appeal DLII's revocation to the BAR (a) precludes a petition for this court's review of that issue for lack of "contested case" jurisdiction, and also (b) bars a Superior Court action for declaratory judgment as to DLII's revocation because of a failure to exhaust administrative remedies; and, if not, whether the BAR and the Superior Court erred in dismissing petitioner's challenges to the DLII and DHCD revocation orders;

2. Whether the BAR, this court, or the Superior Court has jurisdiction initially to review DHCD's alleged enforcement authority, as well as its procedures, under D.C.Code § 5–513 (1981); whether petitioner timely sought review in the appropriate forum; and whether petitioner is entitled to relief.

#### III. DLII's AND DHCD's REVOCATIONS OF THE PERMIT

Petitioner does not challenge the BAR's jurisdiction to resolve the question whether DLII, or only DHCD, had revocation authority, and whether the permit was validly revoked. Rather, petitioner argues that he need not have pursued his BAR remedy because, after Reorganization Plan No. 3, *supra*, effective July 3, 1975, DED/DLII retained no permit revocation authority and thus DLII's revocation order was patently void. It follows, he says, that this court has jurisdiction to confirm that obvious conclusion as we address the issues presented in his timely petition for review

of the BAR's dismissal of his appeal of DHCD's revocation of his permit.

#### A. *BAR jurisdiction over DLII and DHCD revocations*

Although petitioner does not challenge the BAR's jurisdiction to review DLII revocations, that jurisdiction is not self-evident. We choose *sua sponte* to address the jurisdictional issue. *See Evans v. Schlein,* 51 A.2d 472, 474 (D.C.1946).

Central to the analysis is the BAR's jurisdiction to review revocations under Organization Order No. 112, *supra,* which was last amended in 1973. Part E of that Organization Order, captioned *Jurisdiction of the Board,* provides in relevant part:

> 1. The Board [of Appeals and Review], through hearing Committees, shall consider appeals from decisions in the following types of cases in which error is alleged, and make a final administrative determination sustaining, reversing, or modifying the action from which the appeal is taken or, when appropriate, dismiss the appeal or remand the case for further consideration:
>
> \* \* \* \* \* \*
>
> Class C cases. Appeals submitted by applicants or holders of licenses, *permits* and certificates, from actions taken by responsible officials of the *Department of Economic Development* with respect to denial, suspension or *revocation* of a license, *permit* or certificate: Provided, .... [Emphasis added.] [The proviso is irrelevant here.]

Given the fact that the BAR's jurisdiction over permit revocations derives "from actions taken by responsible officials of the Department of Economic Development," *id.,* that jurisdiction ostensibly turns on a

---

9. The District does not deal with DHCD's revocation order. Nor does the District respond to petitioner's contention that, absent BAR jurisdiction, the Superior Court has jurisdiction to rule on the § 5–513 questions presented in the pending case. The District, however, does argue in its brief that the District has authority to remove signs, as in this case, under the plain language of § 5–513, but that the issue "is not squarely presented in this case since the District has not in fact entered upon Auger's property and removed the sign. Nor is there any certainty that the District will inevitably do so, for if Auger loses his appeals, he will no doubt need little prodding to do the job himself."

determination of which department—DED (now DLII) or DHCD—had permit revocation authority after Reorganization Plan No. 3 of 1975, *supra,* became effective. If petitioner is correct that DED (DLII) retained only permit "issuance" authority, while all revocation authority was transferred to DHCD on July 3, 1975, then there is at least a colorable argument that the BAR has jurisdiction to review permit revocations only if carried out by DHCD, as the sole inheritor of DED revocation authority. It would follow that only the Superior Court, not the BAR, has jurisdiction to declare a DLII revocation *ultra vires* and thus a nullity (absent a "contested case" requiring direct review of the DLII revocation by this court). In summary, the BAR's very jurisdiction to review DLII's revocation could turn on the answer to the merits question whether DED (DLII) retained permit revocation authority after July 3, 1975.

On the other hand, given BAR jurisdiction to review permit revocations by DED before July 3, 1975, one can sensibly argue that the reallocation of DED functions was surely not intended to undermine the BAR permit revocation appeal structure. It would follow that the BAR has jurisdiction, after Reorganization Plan No. 3 of 1975, *supra,* to review appeals from permit revocations by whatever Department—DLII or DHCD—purports to exercise DED's revocation authority, without regard to whether the department in question was acting *ultra vires.*

While either argument may be valid, the critical question is a threshold one: does the BAR, or only a court, have jurisdiction to determine whether the BAR has jurisdiction to review DLII's purported revocation? We are satisfied that Reorganization Plan No. 3 of 1975, *supra,* did not affect the BAR's jurisdiction under Organization Order No. 112, *supra,* to review jurisdictional facts and thus to determine (subject to court review) whether it does have jurisdiction over DLII revocations. 2 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 18.07

(1958). That threshold jurisdictional power is there, without regard to how the BAR, or eventually a court, would analyze the jurisdictional problem.

Thus, if petitioner is correct that DLII lacks revocation authority after July 3, 1975—a contention we do not address here—he would, in timely going to the BAR, receive a useful ruling either (1) that the BAR lacks jurisdiction because it can only review revocations by a department with revocation authority (DHCD, not DLII), or (2) that the BAR does have jurisdiction and, in reaching the merits, concludes that DLII has no revocation authority.

■ We therefore hold that the BAR at least has jurisdiction to determine whether it has jurisdiction to review appeals of DLII revocations, and thus has the power to rule accordingly.

B. *Petition for Review as to DLII's Revocation*

■ Because petitioner did not initially invoke the BAR's appellate jurisdiction over DLII's revocation of the permit, this court must dismiss, for lack of our own jurisdiction, that part of his petition for review challenging DLII's revocation of the permit.

■ More specifically, in declining to appeal DLII's revocation to the BAR, petitioner failed to create a "contested case" as to that issue, which "means a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this subchapter), or by constitutional right, to be determined *after a hearing* before the Mayor or before an agency ...." D.C.Code § 1–1502(8) (1981) (emphasis added); *see id.,* § 1–1509. The phrase "after a hearing" means "after a trial-type hearing where such is implicitly required by either the organic act or constitutional right." *Chevy Chase Citizens Ass'n v. District of Columbia Council,* 327 A.2d 310, 314 (D.C.1974) (en banc). The DCA-

PA, § 1–1510 (1981), appropriately limits this court's review to cases in which there has been an evidentiary hearing, meeting the "contested case" requirements, or at least an effort to obtain such a hearing which the agency erroneously denied. *See Capitol Hill Restoration Society v. Zoning Commission*, 287 A.2d 101, 104–06 (D.C.1972); *Bay River, Inc. v. Environmental Quality Commission*, 26 Or.App. 717, 721, 554 P.2d 620, 622–23 (1976).

Petitioner had no "contested case" hearing before DLII, nor was one available. In questioning DLII's action, however, he had a right to such a hearing before the BAR. He received notice of this right. He declined to invoke it. Therefore, absent BAR review, DLII's revocation became final agency action, and this court lacks jurisdiction to review it for lack of a "contested case." *Id.*

### C. *Appeal from Superior Court as to DLII's Revocation*

The next question is whether petitioner can collaterally attack the validity of DLII's permit revocation by challenging it in Superior Court (absent our "contested case" review).

Petitioner argues that if this court lacks jurisdiction to address the DLII revocation issue (as we now have held), the Superior Court does have jurisdiction to declare both the DLII and DHCD revocations invalid; that he had no responsibility to exhaust his BAR remedy for the DLII revocation because that action was patently void; and that we accordingly should reverse the court's dismissal of the complaint and remand for further proceedings on the revocation issue. We disagree.

There can be cases where an agency clearly appears, on the face of the record, to exceed its jurisdiction. Thus, "[n]o court requires exhaustion when exhaustion will involve irreparable injury and when the agency is palpably without jurisdiction." 3 K. DAVIS, *supra*, § 20.02, at 56; *accord Bannercraft Clothing Co. v. Renegotiation Board*, 151 U.S.App.D.C. 174, 189, 466 F.2d

345, 360 (1972), *rev'd*, 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974) (recognizing irreparable injury standard, but finding that no such injury existed in that case). On the other hand, "exhaustion may not be avoided by the mere assertion that an agency is operating *ultra vires,*" *id.*, and "probably every court requires exhaustion when the question presented is one within the agency's specialization and when the administrative remedy is as likely as the judicial remedy to provide the wanted relief." 3 K. DAVIS, *supra*, § 20.01 at 56–57.

Noting that "[i]n between these extremes is a vast array of problems on which judicial action is variable and difficult or impossible to predict," *id.* at 57, Professor Davis proposes that the courts decide whether exhaustion is required by reference to three factors: "extent of injury from pursuit of administrative remedy, degree of apparent clarity or doubt about administrative jurisdiction, and involvement of specialized administrative understanding in the question of jurisdiction." *Id.*, § 20.-03, at 69. As applied to this case, each of these factors militates in favor of the District's argument that petitioner, in order to challenge DLII's revocation of his permit, was required to exhaust his BAR appeal rights—of which he had clear notice—rather than go to Superior Court.

First, given the fact that petitioner himself invoked the BAR's jurisdiction to review DHCD's revocation, we perceive no possible injury if petitioner had pursued a BAR appeal of the DLII revocation.

Second, there are no clear answers to the related questions whether the BAR has jurisdiction to review DLII revocations under Organization Order No. 112, and whether DLII, or only DHCD, received permit revocation authority from DLI by way of DED under Reorganization Order No. 55, *supra*, Commissioner's Order No. 69–96, *supra*, Reorganization Plan No. 3 of 1975, *supra*, and Mayor's Order 78–42, *supra*—as the complexity of the parties' re-

spective arguments shows (Part II., *supra*).

Finally, given the BAR's central role in permit revocation at least since Reorganization Order No. 55, *supra*, as well as the consistent interpretation by the various officials involved that DLI's permit revocation authority was inherent in DED's (now DLII's) permit issuance authority, it is clear that the BAR's specialized administrative understanding will be helpful to a court's ultimate resolution of the related questions whether the BAR has jurisdiction over DLII revocations and whether DLII has authority to revoke a permit.

█ Accordingly, subject to our resolution of one remaining concern, petitioner's failure to exhaust his BAR appeal rights with respect to DLII's revocation of his sign permit is fatal to his Superior Court case insofar as he sought a declaratory judgment that DLII's revocation was invalid. *Bay River, Inc., supra*, 26 Or.App. at 721, 554 P.2d at 623; *see Rhodes v. Quaorm*, 465 A.2d 370, 372–73 (D.C.1983); *Pender v. District of Columbia*, 430 A.2d 513, 515 (D.C.1981); *Tarpley v. District of Columbia*, 342 A.2d 14, 16 (D.C.1975).

The remaining concern is that petitioner no longer has a BAR remedy for the DLII revocation, the time for appeal having expired. This suggests the question whether DLII's revocation must be deemed valid, despite petitioner's Superior Court challenge to DLII's very authority—its jurisdiction—to revoke permits. The answer is yes.

█ The BAR had jurisdiction to determine the jurisdictional facts that would be dispositive of the question whether DLII had authority to revoke permits. *See* 2 K. Davis, *supra*, § 18.07; Part III.A., *supra*.

Petitioner knew he could seek an administrative remedy through the BAR. He chose to forego it. Thus, DLII's revocation, not appealed to the BAR, is a final decision which, under principles of *res judicata* (as an issue that might hve been litigated), is not subject to collateral attack, even though the challenge is to DLII's jurisdiction, not merely to the appropriateness of the revocation by a department with unquestioned jurisdiction to revoke permits. *McCulloch Interstate Gas Corp. v. Federal Power Commission*, 536 F.2d 910 (10th Cir.1976); *see Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940); Restatement (Second) of Judgments §§ 15, 83 (1980) (and commentary); 2 K. Davis, *supra*, § 18.07; *cf. First National Bank of Greeley v. Board of County Commissioners*, 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784 (1924) (waiver theory applicable when agency's jurisdiction is not contested); 3 K. Davis, *supra*, §§ 20.07, –.10 (same).

It follows that DLII's revocation of petitioner's permit must be deemed valid.

D. *Appeal from Superior Court and Petition for Review as to DHCD's Revocation*

█ The foregoing analysis establishes the validity of DLII's revocation of petitioner's permit, without considering the merits of the respective arguments for and against DLII's authority to do so. Given the validity of that revocation, however, DHCD's revocation order was redundant. Any effort to review DHCD's revocation, whether by the Superior Court or by the BAR and this court, would be superfluous. Therefore, as to DHCD's revocation, we must dismiss both the appeal and the petition for review as moot.[10]

10. Alternatively, we conclude that any consideration of the DHCD revocation order is time-barred. DHCD issued that order on August 29, 1980. Petitioner had actual notice of his revocation appeal right to the BAR. Rule 21.1(a) of the BAR required petitioner to appeal within ten days of August 29, 1980. He did not do so until February 12, 1982. DHCD's revocation order was separate from its enforcement order, *see* Part IV.A. *infra*, which was timely appealed because of the tolling attributable to the "show cause" negotiations under D.C.Code § 5–513 (1981) that did not begin until after DHCD's formal order of September 30, 1980. *See* Part IV.D. *infra*. Accordingly, we could have used the foregoing DLII analysis—including concerns

## IV. DHCD's Enforcement Order

The DHCD enforcement effort, pursuant to D.C.Code § 5–513 (1981), is a different matter altogether. Given our resolution of the permit revocation issue, the remaining issues as to enforcement are: (1) whether the BAR has jurisdiction to review DHCD's enforcement order (and, if so, whether petitioner's appeal to the BAR was timely); (2) if not, whether the Superior Court or this court has jurisdiction to review DHCD's enforcement order (a question that inherently requires resolution of whether the real property owner's "show cause" opportunity under §§ 5–513, –515 must meet the "contested case" requirements of the DCA-PA); (3) whether DHCD has authority to invoke § 5–513 to order removal of petitioner's sign; (4) if so, whether petitioner filed a timely petition for review in this court (a question that inherently deals with whether petitioner obtained, or attempted to obtain, a "contested case" hearing); (5) if so, whether petitioner is entitled to relief.

### A. *BAR Jurisdiction over DHCD's § 5–513 enforcement of a permit revocation*

■ Petitioner argues that the BAR's appellate jurisdiction over a permit revocation under Organization Order No. 112, Part E, Class C Cases, *supra*, necessarily embraces jurisdiction over enforcement of the revocation. The District contends that revocation and enforcement are separate actions, and that Organization Order No.

112 expressly grants BAR appellate jurisdiction only over "revocation." We agree with the District.[11] A § 5–513 enforcement action, including a property owner's "show cause" opportunity, is wholly separate from the revocation process.

There is some force to the argument that revocation and enforcement are related; that the BAR has expertise in revocations which would be relevant to their enforcement; that the BAR has established hearing procedures whereas DHCD does not; that there is economy in presenting these related issues to the same tribunal; and that we accordingly ought to deem "revocation" to include "enforcement."

On the other hand, revocation and enforcement procedures are different and typically take place at different times. Moreover, in contrast with the revocation process, DHCD must afford a "show cause" opportunity under § 5–513, and must do so in contexts that do not provide for BAR appellate review.[12] DHCD, therefore, must be prepared to do so. Finally, Organization Plan No. 112, Part E, Class C cases, by its terms, does not confer jurisdiction on the BAR to hear appeals of § 5–513 enforcement actions.

■ We find the latter reasoning more persuasive. Accordingly, we hold that the BAR does not have jurisdiction under Organization Order No. 112, Part E., Class C cases, to review DHCD efforts to enforce revocation of a permit.[13]

about BAR jurisdiction, the lack of a "contested case" warranting this court's direct review, and the failure of petitioner to exhaust administrative remedies before bringing the Superior Court action—to conclude that DHCD's revocation of petitioner's permit must be deemed valid, and thus the DLII revocation issues deemed moot. We chose to present the DLII analysis in the text because both parties framed their arguments primarily by reference to DLII's revocation and DHCD's enforcement.

11. There is irony here. Petitioner, while arguing that DLII's (formerly DED's) permit "issuance" authority does not embrace "revocation," now takes the tack that the BAR's jurisdiction over "revocation" necessarily embraces "enforcement." The District, while arguing that

DLII's permit "issuance" authority necessarily embraces "revocation," now stresses that the BAR's jurisdiction to review a "revocation" does not extend to "enforcement."

12. Reorganization Plan No. 3 of 1975, *supra*, ¶ 7, transferred DED's "powers, duties and functions" relating to "the administration and enforcement of laws and regulations governing the abatement of nuisances under D.C.Code sections 5–313 through 5–315 [now 5–513 through 5–515] (relating to unlawful conditions)" to DHCD.

13. Because the only authority petitioner and the District cite for enforcing revocation of a permit, without a court order, is D.C.Code § 5–513

B. *Superior Court and DCCA jurisdiction to decide § 5–513 enforcement issues*

DHCD has attempted to enforce revocation of petitioner's sign permit by implementing D.C.Code § 5–513(a) (1981), which provides:

> Whenever the owner of *any* real property in the District of Columbia shall fail or refuse, after the service of reasonable notice in the manner provided in § 5–515, to correct *any condition which exists* on or has arisen from such property *in violation of law or any regulation made by authority of law,* with the correction of which condition said owner is by law or by said regulation chargeable, or to show cause, sufficient in the judgment of the Mayor of said District, why he should not be required to correct such condition, then, and in that instance, the Mayor of the District of Columbia is authorized to: Cause such condition to be corrected; assess the cost of correcting such condition and all expenses incident thereto (including the cost of publication, if any, herein provided for) as a tax against the property on which such condition existed or from which such condition arose, as the case may be; and carry such tax on the regular tax rolls of the District, and collect such tax in the same manner as general taxes in said District are collected: Provided, that the correction of any conditions aforesaid by the Mayor of said District under authority of this section shall not relieve the owner of the property on which such condition existed, or from which such condition arose, from criminal prosecution and punishment for having caused or allowed such unlawful condition to arise or for having failed or refused to correct the same. [Emphasis added.]

■ We reject the District's contention (note 9 *supra*) that its enforcement threat is not ripe for review. Thus, we must evaluate, first, whether the Superior Court or this court has jurisdiction, in the first instance, to review the availability of § 5–513 for a DHCD enforcement action. To an extent, either route is available.

The Superior Court has jurisdiction under D.C.Code § 11–921 (1981) to declare whether DHCD has authority to use § 5–513 to take down an unpermitted sign on real property, for that lone question does not present a "contested case." See Part III.B., *supra.*

Alternatively, under § 5–513(a), a real property owner who wants to challenge DHCD's authority to invoke that statute has a simultaneous opportunity, based on particular facts, "to show cause, sufficient in the judgment of the Mayor of said District [of Columbia], why he should not be required to correct such condition." This presents two questions bearing on this court's jurisdiction: whether the owner (1) is entitled by law or by constitutional right to a trial-type, *i.e.,* "contested case," hearing before DHCD and (2) either attempted to obtain, or did obtain, such a hearing. D.C.Code §§ 1–1502(8), –1509, –1510 (1981); *see Chevy Chase Citizens Ass'n, supra,* 327 A.2d at 314; *Capitol Hill Restoration Society, supra,* 287 A.2d at 104–06.

■ Because § 5–513 authorizes DHCD, an administrative agency of the District (note 1 *supra*), to deprive the owner of his property, and because the BAR does not have appellate jurisdiction over an enforcement order, we conclude that due process entitles the owner to a "contested case" hearing at DHCD if he elects to "show cause ... why he should not be required to correct such condition." D.C. Code § 5–513(a) (1981). Whether DHCD grants or refuses such a hearing, the own-

---

(1981), we are not asked to consider whether the BAR has jurisdiction over some other attempted avenue of enforcement, *e.g.,* under Organization Order No. 112, *supra,* Part E, Class A cases, which, in part, confers BAR jurisdiction over:

appeals by persons directed by responsible officials of such Department [of Economic Development] to act or refrain from acting in accordance with inspectional or regulatory requirements (excluding dangerous and unsafe structures and excavations).

er can seek review of DHCD's final action directly by this court. *See Capitol Hill Restoration Society, supra,* 287 A.2d at 104–06. If the owner takes this route, he necessarily would present this court with the threshold question whether § 5–513 is applicable. Thus, by first invoking his "show cause" opportunity and obtaining (or attempting to obtain) a DHCD "contested case" ruling under § 5–513, an owner can seek direct review in this court of· both issues: whether the statute authorizes DHCD to remove unpermitted signs and, if so, whether DHCD properly used the statute against the owner.

▆▆▆▆ In summary, a real property owner, such as petitioner, may seek declaratory and injunctive relief from Superior Court as to the applicability of § 5–513 to a DHCD enforcement action (subject to this court's appellate review). However, since the § 5–513 "show cause" provision requires a "contested case" hearing under the DCAPA, the Superior Court may not consider whether the owner's rights were violated by DHCD's particular use of § 5–513 as to him. Thus, if he went first to Superior Court and lost, *i.e.,* if the court declared § 5–513 available to DHCD (and this court, if asked, upheld that ruling), the owner would have to return to DHCD to "show cause" why DHCD violated his § 5–513 rights. He could then file a timely petition for review of DHCD's action in this court.

In this case, petitioner filed both a Superior Court action and a petition for review by this court on February 17, 1982. Thus, if the petition for review was timely, there is, theoretically, a question whether the Superior Court or this court should initially resolve the § 5–513 applicability issue. The answer does not matter in this case. The Superior Court did not address the issue, but, given a timely appeal, we can now review the court's dismissal of that issue, just as we can review it directly by way of the petition for review, if timely.

As indicated above, that timeliness question is crucial, for if the petition for review

was not timely, and we were limited to reviewing § 5–513 applicability on appeal from the Superior Court—and found it applicable—we would not have jurisdiction to reach the next question: whether DHCD's refusal of the requested "show cause" hearing entitled petitioner to a remand to DHCD for that purpose.

The most orderly way to proceed at this point, therefore, is to resolve the § 5–513 applicability issue as though on appeal from Superior Court. If § 5–513 is applicable to removal of petitioner's sign, we can then address the timeliness of the petition for review and the attendant consequences for the parties attributable to DHCD's alleged refusal to grant a "show cause" hearing.

## C. *Applicability of D.C. Code § 5–513 to DHCD enforcement actions*

Petitioner argues in his brief that § 5–513 is inapplicable because the legislative history demonstrates its purpose was "to assist the District of Columbia in the abatement of 'nuisances and conditions dangerous to life and to health' where the owner of the property upon which the life or health-threatening nuisance exists is a nonresident or is otherwise outside the jurisdiction of the District of Columbia, or else is without funds to abate the nuisance" (quoting H.R.Rep. No. 24, 59th Cong., 1st Sess. 2 (1906) (accompanying H.R. 4461 which became D.C.Code § 5–513)). The District, stressing the broad language in § 5–513 italicized above, replies in its brief that the language of the statute "on its face ... manifestly covers the instant situation," and "its plain meaning cannot be defeated by an attempt to show inconsistent legislative intent."

▆▆▆▆ We do not subscribe to the District's proposition that legislative history can never be used to limit what may appear to be the plain language of a statute. *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 754 (D.C.1983) (en banc). Recently, however, apropos of the

District's argument, we did reaffirm that this court " 'must first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning,' for 'the primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used.' " *Id.* at 753 (citations omitted). Thus, "a court should look beyond the ordinary meaning of the words of a statute only where there are 'persuasive reasons' for doing so," *id.* at 755 (citation omitted), such as the statutory language having only "superficial clarity" or, if literally applied, causing "absurd results," or creating an "obvious injustice," or violating the "legislative purpose." *Id.* at 754.

Given the broad scope, and thus arguably the "superficial clarity," of the language used—the District's right to "correct any condition which exists . . . in violation of law or any regulation"—coupled with the significant intrusion against one's property authorized by § 5–513(a), we deem it appropriate to review the legislative history. Having done so, however, we are not persuaded that § 5–513 is limited to abatement of nuisances and conditions dangerous to life or health. We hold that § 5–513 grants the District authority, through DHCD (note 12, *supra*), to enforce compliance with a valid order revoking a sign permit.

We agree with petitioner that the need for a mechanism to abate various nuisances not specifically covered by D.C. Code §§ 5–604 through 5–608 (1981) and by other laws, especially those for which the responsible persons were not reachable by court process, was the principal purpose underlying enactment of § 5–513. H.R. Rep. No. 24, *supra* (letter of Dec. 5, 1905 from Henry B. MacFarland, President, Board of Commissioners, District of Columbia, to Hon. J.W. Babcock, Chairman, Committee on the District of Columbia, House of Representatives). However, the legislative history, while referring to particular nuisances addressed by other statutes, does not define or detail the nuisances or other conditions encompassed by § 5–513's broad language. Furthermore, although not elucidating the breadth of their concerns, both the House Report and the Mac-Farland letter referred to a bill "to provide for the abatement of nuisances . . . *and for other purposes.*" *Id.* at 1 (emphasis added). Finally, unlike § 5–604, referring to "nuisance[s] dangerous to life and limb," the bill (now § 5–513) referred more generally to "any condition . . . in violation of law or of any regulation," without limitation to conditions endangering life or health.

Without reviewing the legislative history, this court has emphasized the all-encompassing scope of this statutory language, noting that the District is granted "sweeping remedial and enforcement authority in D.C.Code 1973, § 5–313 [now § 5–513]." *District of Columbia v. North Washington Neighbors, Inc.*, 367 A.2d 143, 146 (D.C.1976) (§ 5–313, read in conjunction with applicable regulations, authorized District to repair property owners' water pipes and assess cost against the property served), *cert. denied*, 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977). Nor, despite the drafters' expressed concern, is the enforcement power of § 5–513 limited by the statutory language or the case law to the property of owners not personally reachable through court process. *See id.; Masszonia v. Washington*, 321 F.Supp. 965, 967 (D.D.C.1971), *appeal dismissed*, 155 U.S. App.D.C. 159, 476 F.2d 915 (1973).

Were we to limit the reach of § 5–513 to undefined "nuisances," *compare* § 5–604 (listing particular dangerous nuisances), we would foster endless litigation over the applicability of a statute that we believe Congress more prudently intended to provide as an elastic catchall for "any condition which exists on or has arisen from" real property that violates any law or regulation. The several nuisance statutes referred to in the legislative history, all of which taken together had not proved broad enough to cover the variety of situations

requiring a remedy, suggest that Congress finally adopted a comprehensive approach. We perceive no congressional intent to engraft an unspecified limitation on the "sweeping remedial and enforcement authority" inherent in the general language used in § 5–513. *North Washington Neighbors, Inc., supra,* 367 A.2d at 146. Such a limitation would force courts to evaluate whether particular land use regulations, or their enforcement, seek to protect against dangerous or noxious, or merely unsightly, conditions—a distinction that, even in the case of a sign too high off the ground, would not always be easy to make. There is far greater opportunity for "absurd results" overall from a variety of judicial efforts to resolve whether a particular condition is a nuisance covered by the statute than from judicial application of the clean line drawn by the general language of the statute itself.

Finally, the property owner's opportunity to "show cause ... why he should not be required to correct such condition" precludes any argument that there will be "obvious injustice" from the general availability of § 5–513 to enforce violations of laws and regulations affecting real property.

In summary, we conclude that the broad language of § 5–513 is clear. Its application to enforcement of revoked permits will not cause absurd results or obvious injustices. Nor, given the statutory language and the legislative history, read in conjunction with D.C.Code § 5–604 (1981), will DHCD's use of § 5–513 in this context violate the legislative purpose. We find no "persuasive reasons" for ignoring the plain language of the statute. We hold that the District of Columbia, through DHCD, has authority to invoke § 5–513 here, if necessary, to enforce revocation of petitioner's permit.[14]

---

**14.** Because the BAR has jurisdiction, in the first instance, to review revocation orders while this court has jurisdiction, in the first instance, to review § 5–513 enforcement orders, this court,

### D. *Applicability of § 5–513 to this case: timeliness of petition for review*

Having resolved (initially by way of the appeal from Superior Court) DHCD's authority to use § 5–513 enforcement powers, we turn to the timeliness of the petition for review, in order to determine whether petitioner is still entitled to a DHCD "show cause" hearing (if he wants one, given the valid revocation of his permit).

Although petitioner filed an extraneous appeal to the BAR (Part IV.A., *supra*) on February 12, 1982, his appeal was denied on February 16, and he filed a petition for review in this court on February 17. Under our rules, a petition for review is timely if filed "within 15 days from the date of having been given formal notice of the order or decision sought to be reviewed." D.C.App.R. 15(b). Thus, the petition will be timely only if petitioner received "formal notice" from DHCD, within the meaning of Rule 15(b), on February 8, 1982, the date on which DHCD—after several earlier, similar communications—informed petitioner for the last time (by letter of February 5) that it would immediately contract for removal of the sign.

The District takes the position that petitioner was obliged to file a petition for review within 15 days of DHCD's August 29, 1980, letter directing petitioner to remove the sign or "face further enforcement action." That argument is belied by the fact that DHCD did not formally order removal of the sign, with notice of the required opportunity to "show cause," until September 30, 1980. On October 10, 1980 —within the 21 days DHCD had given petitioner to remove the sign or to show cause why he should not be required to do so— petitioner's counsel wrote DHCD that his September 24 letter to DLII (copy to DHCD) "shows cause." Counsel asked for a meeting. Petitioner and his counsel then began negotiations with District officials,

---

if asked, presumably would stay an enforcement order at least until the BAR had concluded its review of the underlying permit revocation.

resulting in the November 17, 1980, compromise and settlement of both the revocation and enforcement issues. When that agreement broke down and DHCD sent a "final notice" on November 30, 1981, petitioner replied on December 4, requesting resolution of the matter by the "administrative and/or judicial process"—in effect a request, after the compromise settlement had failed, for the formal show cause hearing to which petitioner was entitled under § 5-513.

Instead of agreeing to that request, DHCD replied on February 5, 1982, that petitioner had failed to appeal the DLII revocation, he had committed himself to take the sign down, the District had kept its part of the November 17, 1980, agreement, and the District, accordingly, could contract for removal of the sign immediately. In effect, therefore, DHCD—having agreed to toll the § 5-513 enforcement process through the informal "show cause" negotiations timely instituted by petitioner—declined petitioner's timely request to exercise his § 5-513 right to "show cause" at a contested case hearing under the DCAPA, preferring to hold petitioner to his compromise and settlement of November 17, 1980.

 Final agency action, for purposes of triggering a petitioner's obligation to seek judicial review within the prescribed time, is a definitive statement of the agency's position, having the force of law, such that it will have a direct and immediate effect on one's day-to-day business and the affected party will learn that immediate compliance is expected. *Carter/Mondale Presidential Committee, Inc. v. Federal Election Commission*, 711 F.2d 279 at 286 (D.C.Cir.1983). DHCD's directives of September 30, 1980 and of November 30, 1981, met those criteria but for the fact that, after the first, DHCD immediately entertained a protracted, informal "show cause" negotiation process. When that process broke down, DHCD refused, after its November 30, 1981, directive, to grant petitioner the "show cause" hearing that he

promptly requested on December 4. Having instituted formal enforcement procedures once again on November 30, 1981, DHCD was required to afford petitioner that hearing. Petitioner properly expected a timely, lawful response to his December 4 letter. We cannot fault him for not petitioning for review until after DHCD's February 5, 1982, reply. It was DHCD's refusal of the hearing that created a "contested case." *See Capitol Hill Restoration Society, supra*, 287 A.2d at 104-06.

 Under the circumstances, we conclude that DHCD's final agency action— the "formal notice of the order or decision sought to be reviewed," within the meaning of D.C.App.R. 15(b)—was not taken until February 5, 1982 (received by petitioner on February 8), making timely, within 15 days, the February 17, 1982, petition for review.

### E. *Relief*

 It follows that, because petitioner requested, but did not receive, the "show cause" hearing at DHCD to which he was entitled, we must remand the case to DHCD for a "contested case" hearing on the question whether—despite a valid revocation of petitioner's sign permit—he can show cause why DHCD should not proceed to remove the sign pursuant to D.C.Code § 5-513 (1981). It may be that, confronted by the valid revocation of his permit, petitioner will find no reason to pursue a "show cause" hearing and, as the District suggests (note 9 *supra*), will voluntarily take down the sign. However, petitioner was denied a hearing to which he had a right. On remand, he may advance some basis for persuading DHCD that it should not proceed, despite our holdings that the permit revocation was valid and that DHCD has § 5-513 authority. Thus, we perceive no basis for declining to afford him the remand option, in effect staying the proceedings until that time.

 Because, as it turns out, we have jurisdiction by way of a timely petition for review to consider both DHCD's authority

to invoke § 5–513 enforcement procedure and DHCD's application of § 5–513 to petitioner, we can rule solely on the basis of that petition. Thus, we affirm the Superior Court's dismissal of the complaint.[15]

## V. CONCLUSION

It is a disgrace to our governmental-legal system that these complex administrative proceedings and court actions have been required in order to answer—with great difficulty—the straightforward questions whether, and how, the District of Columbia has a right to revoke a permit for a hotel sign; whether the District can enforce a valid revocation by entering the property to take down the sign if the owner refuses; and, if so, whether the District acted properly in this case. The elaboration of the issues here has been necessary to resolve the case, and at that we do not answer—because we are not squarely presented—the question that caused the problem: whether DLII has permit revocation authority. We confess our own discomfort with a legal system that does not permit us to reach that issue, which there is every reason to believe will cause difficulty in the future unless the Council and/or the Mayor act to clarify the situation.

Admittedly, appellate courts often find ways to reach critical issues that lurk in a case, even when not directly presented, if the public interest (including administrative and judicial economy) warrants judicial resolution. But here, given the BAR's experience with permit revocations over the years and its specialized administrative understanding of the several reorganizations that affect such revocations, we deem it best to forbear from finding a way around the BAR's useful role—indeed, its jurisdictional role—in resolving that issue. It was petitioner's responsibility, not this court's, to force a merits resolution of DLII's per-

mit revocation authority by appealing that revocation to the BAR. He did not do so.

To make as clear as possible what we do conclude, we summarize our holding and, in an Appendix, chart the appeal routes for this kind of case:

1. DLII's revocation of petitioner's permit is deemed valid because he failed to appeal it to the BAR, resulting (a) in dismissal of his petition for review on that issue for lack of "contested case" jurisdiction to review it, and (b) affirmance of the Superior Court's dismissal of the complaint for failure to exhaust administrative remedies (with *res judicata* precluding his time-barred challenge to DLII's jurisdiction to revoke permits).

2. DHCD's revocation of the permit was redundant and thus not reviewable by the Superior Court or by this court.

3. D.C.Code § 5–513 (1981) authorizes the District of Columbia, through DHCD, to enforce revocation of petitioner's sign permit.

4. Petitioner had a right under D.C. Code § 5–513(a) (1981) to "show cause" at a DHCD "contested case" hearing, D.C. Code §§ 1–1502(8), –1509, why DHCD—despite a valid revocation order—should not remove his sign.

5. Petitioner timely asked DHCD for, but did not receive, a "contested case" hearing. He sought a timely review of that refusal directly in this court (after an extraneous appeal to the BAR which does not have appellate jurisdiction to review a DHCD enforcement order under § 5–513(a)).

6. Accordingly, we remand the case to DHCD for further proceedings limited to the question whether petitioner can show cause why DHCD should not remove his unpermitted sign pursuant to D.C.Code

**15.** Petitioner has not, as a fallback, sought enforcement of the November 17, 1980, compromise and settlement whereby he agreed to take down the sign in consideration of the District's expediting the certificate of occupancy for his hotel and paying part of the cost of removing the sign. Accordingly, there is nothing, with respect to that agreement, for the trial court to consider.

§ 5–513 (1981). We affirm the Superior Court's dismissal of petitioner's complaint as superfluous under the circumstances.

*So ordered.*

## APPENDIX

MACK, Associate Judge, concurring in part but dissenting as to disposition:

If the revocation of petitioner's permit for the penthouse sign is valid, and I join Judge Ferren in holding that it is, it is impossible for petitioner to show cause why he should not be required to remove a sign that is existing in violation of law. The Administrative Procedure Act should not be interpreted to require a useless act. I would affirm the administrative and judicial judgments before us and clear the way either for petitioner to voluntarily comply with the law or for the District of Columbia to use its enforcement power.